## UNITED STATE DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

|  |  |  |
|---|---|---|
| **AVERAGE JOE'S ENTERTAINMENT GROUP, LLC,** | ) ) ) | **Case No. 3:16-cv-03294** |
| **Plaintiff,** | ) ) | **JUDGE MCCALLA** |
| **v.** | ) ) ) | **MAGISTRATE-JUDGE BROWN** **JURY DEMAND** |
| **SOUNDCLOUD LTD.,** *et al.,* **Defendants.** | ) ) ) ) | |

### MEMORANDUM OF LAW IN SUPPORT OF
### PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Average Joe's Entertainment Group, LLC (hereinafter "AJE"), respectfully submits this memorandum of law in support of its Motion for Summary Judgment with respect to Plaintiff's claims of copyright infringement by Defendant SoundCloud, Ltd. (hereinafter "SoundCloud"), as well as all pending counter-claims seeking declaratory judgment of non-infringement.

## I.     INTRODUCTION

This action arises out of Defendant's unauthorized use of 78 sound recordings owned by Plaintiff (and registered with the United States Copyright Office) and Defendant's unauthorized use of 22 musical compositions (songs) owned by Plaintiff (and registered with the United States Copyright Office) which were embodied on commercially released recordings and distributed to the public via Defendant's SoundCloud music subscription service via on-demand streams and/or tethered/limited downloads, without a license to do so.

Plaintiffs submit that the undisputed facts set forth in conjunction with this motion for summary judgment and the supporting declarations attached hereto clearly establish that

summary judgment as to Plaintiff's claims for copyright infringement in this action is appropriate. Additionally, Plaintiff submits that the undisputed facts negate in total Defendants' counter-claims seeking a declaration of non-infringement, thus making summary judgment appropriate regarding all counter-claims as well.

## II.     LEGAL STANDARD

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); *Covington v. Knox County School Sys.*, 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. *See Martin v. Kelley*, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Covington*, 205 F.3d at 914 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable

2

inferences in its favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

> To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue.  As the Supreme Court has explained:
>
> 'There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'
>
> *Vance v. Latimer*, 648 F. Supp. 2d 914, 918 (6th. Cir. 2009) (quoting *Anderson* at 249-250).

Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insuffient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *See Shan v. Racetrac Patroleum Co.*, 338 F.3d 557, 556 (6th Cir. 2003)(quoting *Anderson* at 252).  If the evidence by the non-moving party is "merely colorable," or "not significantly probative," or not enough to lead a reasonable jury to find for the non-moving party, the motion for summary judgment should be granted.  *Anderson*, 477 U.S. at 249-252.

*17 U.S.C. § 106* provides that the owner of copyright has the exclusive rights to do and to authorize any of the following:

> (1) to reproduce the copyrighted work in copies or phonorecords;
>
> (2) to prepare derivative works based upon the copyrighted work;
>
> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
>
> (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;

(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly;

*17 U.S.C. §106*

Further, the owner of an exclusive right under a copyright is entitled to institute an action for any infringement of that particular right committed while he or she is the owner of it. *17 U.S.C. §501*.

The elements of a copyright infringement claim are (1) ownership of the copyright by the plaintiff and (2) copying by the defendant. *Zomba Enters., Inc. v. Panorama Records, Inc.*, 491 F. 3d 574, 581 (6th Cir. 2007).

In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate. *17 U.S.C. §410(c)*.

One infringes contributorily by intentionally inducing or encouraging direct infringement . . . ." Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930, 125 S. Ct. 2764, 2776, 162 L. Ed. 2d 781 (2005). For Plaintiffs to prevail under this theory, the undisputed material facts must show that Defendants had knowledge of the third party's infringing activity and "induce[d], cause[d], or materially contribute[d]" to that conduct. Bridgeport Music, Inc. v. Rhyme Syndicate Music, 376 F.3d at 621 (quoting Gershwin Publ'g Corp., 443 F.2d at 1162).

### III.    FACTS

### Background

AJE is the owner of numerous sound recordings and musical compositions. For the works at issue in this action, AJE has secured valid copyright registrations for each of the 78

sound recordings at issue as well as the 22 musical compositions (songs) at issue in this action. (Statement of Undisputed Facts [hereafter "SUF"], 1, 3, 9,  13, 15, 19, 21, 25, 27, 31, 33, 37, 39, 43, 45, 49, 51, 55, 57, 61, 63, 67, 69, 73, 75, 81, 83, 89, 91, 97, 99, 105, 107, 113, 115, 121, 123, 129, 131, 137, 139, 145, 147, 153, 155, 161, 163, 169, 171, 177, 179, 185, 187, 193, 195, 201, 203, 209, 211, 217, 219, 225, 227, 233, 235, 241, 243). AJE's business revolves around the exploitation and protection of these sound recordings and musical compositions.

The SoundCloud music service began as a means for music creators to share music for collaboration, but developed into a platform for artists, creators, and record labels to share content with a growing community of SoundCloud users.  Prior to 2014, SoundCloud ████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████  At this time, SoundCloud ████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████

In 2014, SoundCloud ████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

████████████████ █████████████████████████████████

██████████████████████████████████████████████████████

████ As a result, ████████████████████████████████████

██████████ AJE and SoundCloud again discussed a commercial agreement in late 2015 into January 2016, but did not come to terms and no license agreement was entered into between the parties.

On March 29, 2016, SoundCloud launched its subscription music service which provided users the ability, for a monthly fee, to remove ads from their SoundCloud platform experience, unlimited streaming of all SoundCloud content, and the ability to download music via tethered download, which is █████████████████████████████████████

██████████████████████████████████████

█████████████████████ So long as the user continues to pay the monthly fee to SoundCloud, the recording(s) will remain on the user's external device for offline listening, but if the user ceases paying the monthly fee to SoundCloud, the recording will expire and remove itself from the user's device. This type of download is in contrast to what is known as a permanent

download, which, once downloaded to an external device, remains until the user deletes it, with no connection (or tether) to any service.

SoundCloud's subscription service has since evolved into a two-tier service, SoundCloud Go and SoundCloud Go+. Both tiers █████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████

Upon learning of the launch of the SoundCloud subscription service, Nathan Thompson, Director of Business Development and Marketing for AJE, ████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████AJE didn't hear anything further from SoundCloud. In May 2016, AJE purchased a subscription user account with SoundCloud and began to investigate whether or not AJE content was available on the SoundCloud subscription service. AJE found that all of its content (content previously put on the free, noncommercial service by AJE, as well as third-party uploaded AJE content (by persons with no connection to AJE) was available on the SoundCloud subscription service and was available for paid unlimited streaming and tethered downloads. In conjunction with its investigation, AJE employees, Nathan Thompson and Andrew Davis, listened to and tethered downloaded each recording belonging to AJE (whether an owned sound recording or an owned musical composition embodied on a recording) on the SoundCloud platform (to ensure the recording was in fact AJE owned content). (SUF 294). In many cases AJE captured screenshots of the materials on the SoundCloud platform showing its use on the pay service and its being downloaded (via tethered download) or showing the ability to do so. (SUF 295).

7

# IV.    ARGUMENT

### A. **Plaintiff is the owner of the copyrighted sound recordings and musical compositions at issue and said ownership is without controversy.**

AJE is the owner of the 78 copyrighted sound recordings at issue in this litigation, as evidenced by the copyright registration certificates collectively set forth on Exhibit A to the Declaration of Nathan Thompson filed in support hereof. Additionally, AJE is the owner or co-owner of the 22 copyrighted musical compositions (songs) as evidenced by the copyright registration certificates collectively set forth on Exhibit B to the Declaration of Nathan Thompson filed in support hereof. (SUF 1, 3, 9,  13, 15, 19, 21, 25, 27, 31, 33, 37, 39, 43, 45, 49, 51, 55, 57, 61, 63, 67, 69, 73, 75, 81, 83, 89, 91, 97, 99, 105, 107, 113, 115, 121, 123, 129, 131, 137, 139, 145, 147, 153, 155, 161, 163, 169, 171, 177, 179, 185, 187, 193, 195, 201, 203, 209, 211, 217, 219, 225, 227, 233, 235, 241, 243). Said musical compositions were embodied in various sounds recordings as set forth in Plaintiff's Statement of Undisputed Facts.

### B. **SoundCloud committed direct infringement by copying, performing, and distributing AJE's copyrighted works via the SoundCloud subscription service.**

When  SoundCloud ██████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████  ███

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████ Thus was the

case with AJE content. AJE discovered all content at issue in this action was available on the

SoundCloud subscription service and available for streaming and tethered download. AJE

employees listened to each recording on the subscription service to confirm that the listed

recordings were in fact AJE content. (SUF 294). In many instances, AJE employees captured

screenshots of the material playing on the SoundCloud subscription service. (SUF 295). Prior to

initiation of this lawsuit, AJE confirmed with any co-owners of the musical compositions at issue

to confirm that they had not granted license to SoundCloud for any use, which was confirmed by

all co-owners of copyrights at issue herein.

By copying, performing, and distributing AJE owned and copyrighted sound recordings

and musical compositions embodied on sound recordings for on-demand streaming and tethered

download on the SoundCloud subscription music service, without a license to do so, SoundCloud

violated AJE's exclusive rights granted afforded it by 17 U.S.C. § 106.

**C. SoundCloud committed contributory infringement by copying, performing, and distributing AJE's copyrighted works uploaded by third-party users via their inclusion in both the SoundCloud subscription service and the SoundCloud free service.**

Pursuant to the ██████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

9



As such, any third-party uploaded content owned by AJE, either uploaded ████████████████████████████████████████ and was ███████████████████████████████████████ and was ultimately, due to SoundCloud's inclusion of all material on the site to the subscription service, made available for on-demand streaming and tethered downloading on the SoundCloud subscription service.

## D. **SoundCloud cannot claim protection under the Safe Harbor provision of the Copyright Act.**

17 U.S.C. § 512(c)(1) provides that

> A safe harbor for an internet service provider (ISP), whereby said ISP cannot be liable for monetary damages and, with limited exception, injunctive relief, for infringement of copyright by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider, if the service provider –

(A)

    (i)      does not have actual knowledge that the material or an activity using the material on the system or network is infringing;

    (ii)     in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or

    (iii)    upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;

(B) does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; **and** (emphasis added)

(C) upon notification of claimed infringement as described in paragraph (3), responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity.

In the instant case, AJE submits that SoundCloud fails to meet any of the requirements which would afford SoundCloud safe harbor from damages as Plaintiffs claims of infringement arise from SoundCloud's inclusion of AJE content (uploaded by AJE and unaffiliated third-party users). As an initial point, Plaintiff contends that SoundCloud cannot claim safe harbor protection for its own infringing act (distributing the copyrighted works through its paid subscription music service).

Given the fact that AJE ████████████████████████████████████ ████████████████████████████████, AJE contends that SoundCloud had actual knowledge of the identity of AJE sound recordings ████████████████████, as well as ████████████████████████████████████████████████████████████ ████████████████████████████████████████████). Additionally, AJE

submits that for content uploaded by AJE to AJE controlled accounts, ████████████

██████████████████████████, put SoundCloud on notice as to the ownership claim of

AJE. SoundCloud was also well aware that it had not entered into a commercial license with

AJE but included AJE content in the subscription service and made AJE content available to

paying subscribers for on-demand streams and tethered downloads, with no notice to AJE that██

████████████████████████████████████████████as of March 29, 2016. AJE

submits that the foregoing demonstrates actual knowledge of infringing activity, thus destroying

any safe harbor protection.

Additionally, many of the copyrighted works at issue in this action, despite the action

being brought in December 2016, remained on the Soundcloud subscription service until July 23,

2018. (SUF 97, 99, 104) (Thompson Dec.,¶ 34) . There is no means by which removing alleged

infringing material more than a year and a half after a lawsuit for copyright infringement is

brought can be considered acting "expeditiously to remove," thus further destroying

SoundCloud's claim of safe harbor.

Paragraph B of the above-cited statute, required that the ISP must not receive a financial

benefit directly attributable to the infringing activity, in a case in which the service provider has

the right and ability to control such activity. First, there can be no question that SoundCloud had

the right to control what content was included in its subscription service. In fact, ███████████

██████████████████████████████████████████████████████████

██████████████████████ However, ████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████ For those ███████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████ As demonstrated ███████████████

███████████████████████████████████████▌██████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████ ). However, SoundCloud

seems to have ignored this rule when it began ███████████████████████

██████████████████████████████████████████████████████

██████ As such, SoundCloud fails the second primary requirement for safe harbor protection.

Plaintiff submits that SoundCloud's infringement arises from its own actions, rather than the actions of its users (despite allowing uploads of AJE content by third-parties), as it was SoundCloud who by default monetized AJE's content on the SoundCloud platform (monetized for SoundCloud only) by distributing AJE's copyrighted works (sound recordings and musical compositions embodied on recording) via on-demand streams and tethered downloads through SoundCloud's music subscription service.

### E. **Conduct during discovery.**

Through written discovery, AJE requested numerous categories of information, documents and production of things which were simply never produced by SoundCloud. Most notably, (1) AJE requested from SoundCloud copies of the relevant AJE sound recordings on the SoundCloud service for comparison to the numerous recordings provided by AJE to SoundCloud – SoundCloud claimed to be unable to ascertain which recordings to produce; (2) AJE requested

information on the number of streams and tethered downloads for each work at issue – again, and despite Joseph Hayes' testimony that the records were kept, SoundCloud failed to produce any such information; and (3) AJE requested financial information on SoundCloud Ltd., which SoundCloud simply refused to produce. AJE contends that all three categories above are extremely relevant to this case and should have been produced. The parties entered into a protective order which clearly would have protected any such information. And Defendant's refusal to produce the requested information has made it impossible for Plaintiff to calculate actual damages in this case. (See Doc. No. 98 – Plaintiff's Motion to Compel, Deposition Transcript of Megan West, Exhibits 159 & 160)

While counsel for the parties have genuinely worked together quite well, AJE submits that SoundCloud did not cooperate with discovery in good faith, and any weaknesses of proof in these stated areas should be viewed negatively toward SoundCloud based upon its failure to act in good faith, and this should be considered by the Court regarding damages in this action.

### F.  Election of Damages.

Thus far in this litigation, Plaintiff has made no election as to whether it seeks actual or statutory damages. At this time, Plaintiff gives notice of its election of statutory damages.

### G.  Number of infringements – Compilations v. Collective Works

One of the known points of contention between the parties in this action is the number of infringement claims, as most all of the sound recordings at issue in this action were registered as collective works listing multiple individual sound recordings on a single registration that are included in the collective work. Plaintiff submits the law is well settled in this District regarding

14

this point, as explained quote thoroughly in _King Records, Inc. v. Bennett_, 438 F. Supp. 2d 812, 840-843 (M.D. Tenn. 2006).

The Copyright Act defines a "compilation" as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship. The term 'compilation' includes collective works." _17 U.S.C. § 101_. A compilation may consist of original materials or data that are separately copyrightable. 1 _Nimmer on Copyright, § 3.02_, at 3-6-3-7. When the original materials or data of a compilation are separately copyrightable, it is called a "_collective" work_. See _17 U.S.C. § 101_ (defining "_collective" work_ as "work, such as a periodical issue, anthology, or encyclopedia, in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole."); see also _37 C.F.R. § 202.3(b)(3)_. The Copyright Act, however, is silent as to whether registration of a "collection" extends copyright protection to each copyrightable element in the collection, or just protects the authorship, if any, involved in selecting and assembling the collection. While the case law in the Sixth Circuit is silent on this issue, other courts have found that registration of a collection extends copyright protection to each copyrightable element in the collection.

The Fifth Circuit was faced with the exact issue that this case presents, namely, "whether a copyright of a 'collection' of individual songs, whose titles are not individually listed on the _copyright registration_, extends copyright protection to the collection as a whole and to the individual songs, or just to the collection as a whole." _Szabo v. Errisson, 68 F.3d 940, 942 (5th Cir. 1995)_ (emphasis in original). The court held that "a copyright of a collection of unpublished works protects the individual works that are copyrightable, regardless of whether they are individually listed on the copyright certificate." _Id. at 943_. In Szabo, the plaintiff registered a collection of songs under the title "Scott Szabo's Songs of 1991." _Id. at 941_. The particular song at issue, entitled "Man v. Man," was listed on the deposit copy, but was not named on the registration certificate. _Id. at 942_. Nevertheless, the court found that the registration of the album protected the individual song. _Id. at 943_. Whether the individual song was named on the certificate was simply irrelevant. _Id. at 942-43_.

The court in _Sylvestre v. Oswald, No. 91 Civ. 5060 (JSM), 1993 U.S. Dist. LEXIS 7002, at *4 (S.D.N.Y. May 18, 1993)_ , reached the same conclusion. In that case, plaintiffs alleged defendants had infringed plaintiffs' copyright in a song entitled "Heaven." _Id. 1993 U.S. Dist LEXIS 7002, at *1_. Defendants claimed the only registration offered was for a work called "Cherry Bomb." _Id. 1993 U.S. Dist LEXIS 7002, at *3_. "Cherry Bomb" was

the title of a collection of fifteen songs contained on a single cassette tape. Id. Defendants claimed that the registration certificate did not cover the individual song "Heaven" because it was not named on the certificate. Id. The court rejected defendant's argument and found the collective registration protected each discrete song. *Id. 1993 U.S. Dist LEXIS 7002, at *6*.

Other courts not dealing with music reached the similar conclusion that the registration of a *collective work* may be sufficient to permit an *infringement* action of the constituent part. See *Xoom, Inc. v. Imageline, Inc., 323 F.3d 279, 283 (4th Cir. 2003)* (adopting view "that where owner of a *collective work* also owns the copyright for a constituent part of that work, registration of the *collective work* is sufficient to permit an *infringement* action of the constituent part."); *Morris v. Bus. Concepts, Inc., 259 F.3d 65, 68 (2d Cir. 2001)* (same); *Educ. Testing Servs. v. Katzman, 793 F.2d 533, 539-40 (3d Cir. 1986)* ("The fact that a registrant denominates the material as a compilation does not in itself signify that the constituent material is not also covered by the copyright. In fact, the statutory premise that the copyright in a compilation extends to the constituent material contributed by the author is express . . . ."); *Malaco Inc. v. Cooper, No. 3:00-CV-2648-P, 2002 U.S. Dist. LEXIS 12069, at *8 (N.D. Tex. July 3, 2002)* ("copyright of a collection can protect the individual components of that collection even when the individual components are not listed on the *copyright registration*."); *Howard v. Sterchi, 725 F. Supp. 1572, 1575 n.6 (N.D. Ga. 1989)* ("the mere fact that components in a *collective work* are more easily severed does not compel the conclusion that they must be severed and separately registered.") (emphasis in original).

Defendants argue that these cases are inapplicable because they do not deal with sound recordings. Defendants attempted distinction is irrelevant. In Szabo, the court held that "a copyright of a collection of unpublished works protects the individual works that are copyrightable, regardless of whether they are individually listed on the copyright certificate." *68 F.3d at 943*. The court did not limit this ruling to musical compositions, with which it was dealing. Instead, the limitation was simply that the individual parts of a collection must be copyrightable in and of themselves. Defendants do not argue (and rightly so) that sound recordings are not copyrightable. See *17 U.S.C. 102(a)(7)* ("Copyright protection subsists . . . in original works of authorship . . . . Works of authorship include the following categories: . . . (7) sound recordings.") As sound recordings are copyrightable, the rule from *Szabo* is applicable and individual sound recordings that are part of a collection are protected by copyright, even if the certificate of registration only identifies the collection, and not each sound recording comprising the collection.

Defendants challenge this body of law. They contend that these cases are no longer good law in light of dicta in the Supreme Court's ruling in *Dastar*

*Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 123 S. Ct. 2041, 156 L. Ed. 2d 18 (2003)*. Defendants' reliance on Dastar is misplaced. In Dastar, plaintiff Twentieth Century Fox ("Fox") originally held the copyright to a television series entitled "Crusader in Europe," which was based on General Dwight D. Eisenhower's book of the allied campaign in Europe during World War II. *Id. at 25*. The television series consisted of twenty-six episodes, which combined narration of Eisenhower's book with film footage from the United States Army, Navy, and Coast Guard, among others. *Id. at 26*. The television series was copyrighted as a compilation, but the original film footage was not copyrighted. *Id. at 37*. Fox allowed its copyright in the series to expire in 1977, leaving the series in the public domain. *Id. at 26*. Defendant Dastar Corporation ("Dastar") purchased copies of the original, public domain television series. Id. Dastar copied and edited the series before selling it as its own product under the title Campaigns in Europe. *Id. at 26-27*. Fox and several licensees brought suit, alleging, inter alia, that Dastar's sale of Campaigns in Europe without proper attribution to the Crusade in Europe series constituted "reverse passing off" in violation of *15 U.S.C. 1125(a)*. Id.

After deciding the "reverse passing off" claim, in dicta the Supreme Court demonstrated how a "reverse passing off" claim is distinct from a copyright *infringement* claim. In doing so, the Supreme Court stated: "The original film footage used in the Crusade television series could have been copyrighted, see *17 U.S.C. § 102(a)(6)*, as was copyrighted (as a compilation) the Crusade television series, even though it included material from the public domain, see *§ 103(a)*." *Id. at 37-38*. Defendants interpret this as follows: "From this statement, it is evident that the Supreme Court considered the Crusade television series copyrighted . . ., but did not consider the original film footage used therein . . . [to have been] copyrighted, saying it merely 'could have been copyrighted' (and by implication, not actually copyrighted, like the entire series." Thus, Defendants interpret this as an affirmative statement by the Supreme Court that the constituent parts of a compilation are not protected by copyright unless they are separately registered.

The Court does not interpret this dicta in *Dastar* in the same manner. This Court understands the Supreme Court to be stating that there were two ways in which Fox could have brought a copyright *infringement* claim. The first would have been if the original film footage was copyrighted and the second would have been if the copyright in the television series was renewed. By pointing out that the original film footage was copyrightable separate and apart from the television series, the Supreme Court did not affirmatively state that those portions of the original film footage included in the television series were not copyrighted. Rather, the Supreme Court simply noted that constituent parts of a *collective work* may be separately copyrightable. This reading of the Supreme Court's dicta is consistent with the Copyright Act, which specifically defines a "*collective" work* as a

"work, such as a periodical issue, anthology, or encyclopedia, in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole." *17 U.S.C. § 101* (emphasis added); see also 1 *Nimmer on Copyright, § 3.02*, at 3-7. ("Those compilations that consist of contributions that themselves constitute "works" capable of copyright are called collective works."). The Supreme Court, however, was silent as to the issue that faces the Court: whether the constituent parts must be separately registered in order to obtain copyright protection or whether the registration of the collection is sufficient. In light of the Supreme Court's silence on this issue, the Court follows the body of law developed by other courts and holds that the copyright of a collection of sound recordings in the form of an album extends copyright protection to both the album and the individual sound recordings contained therein, regardless of whether the sound recordings are individually listed on the certificate of registration.

Based upon the King Records case, Plaintiff submits that the sound recording copyrights at issue herein are collective works. Each sound recording contained therein, and listed individually on the certificate of registration, is wholly copyrightable on its own, separate from the collection, and as such, is entitled to a separate determination of infringement and award of damages, despite being registered as part of a collective work.

Plaintiff contends it is entitled to infringement for 100 acts of copyright infringement.

**H.  Willfullness and Damages.**

The *King Records* case (at 852) again provides a very good analysis regarding damages in an infringement case:

*1. Statutory Damages*

A copyright owner may elect to recover an award of statutory damages in lieu of actual damages and profits at any time before final judgment is rendered. *17 U.S.C. § 504(c)(1)*. The Copyright Act permits a minimum award of $ 750 and a maximum award of $ 30,000 for each copyrighted work infringed. Id. "District courts have wide discretion in setting damages within the statutory range set forth in § 504(c)(1)." *Disney Enters., Inc. v. Farmer, 427 F. Supp. 2d 807, 2006 WL 962577, at \*6 (E.D. Tenn. 2006)*. This statutory scheme is "'designed not solely to compensate the copyright owner for losses incurred, but also to deter future *infringement*.'" *Johnson v. Jones, 149 F.3d 494, 504 (6th Cir. 1998)* (quoting *F.W.*

18

*Woolworth Co., 344 U.S. at 233*).

Liability for copyright *infringement* does not turn on the infringer's mental state because "a general claim for copyright *infringement* is fundamentally one founded on strict liability." *Bridgeport Music, Inc. v. 11C Music, 154 F. Supp. 2d 1330, 1335 (M.D. Tenn. 2001)* (citation omitted). For purposes of damages, however, the infringer's mental state is important, as damages may be increased or decreased based on an infringer's knowledge of *infringement*. Thus, if the plaintiff proves that the *infringement* was <u>willful,</u> statutory damages may be awarded up to $ 150,000 per copyrighted work infringed. *17 U.S.C. § 504(c)(2)*. On the other hand, if the defendant proves that the *infringement* was <u>innocent,</u> the award may be reduced to $ 200. *17 U.S.C. § 504(c)(2)*.

"Willful" and "innocent" have specialized meanings under the Copyright Act. On the one hand, willful *infringement* means conduct that the defendant <u>knows</u> constitutes copyright *infringement*. "[O]ne who has been notified that his conduct constitutes copyright *infringement*, but who reasonably and in good faith believes the contrary, is not 'willful' for these purposes. But one who 'recklessly disregards' a copyright holder's rights, even if lacking actual knowledge of *infringement*, may be subject to enhanced damages." 4 *Nimmer on Copyright, § 14.04[B][3][a]*, at 14-78-14-79, quoted in *Princeton Univ. Press v. Mich. Document Servs., Inc., 99 F.3d 1381, 1392 (6th Cir. 1996).* On the other hand, the Copyright Act explains that innocent *infringement* occurs when "the infringer was not aware and had no reason to believe that his or her acts constituted an *infringement* of copyright." *17 U.S.C. § 504(c)(2)*. To prove "innocent" *infringement*, the defendant has the burden of showing that he or she had a good faith belief that his or her infringing conduct did not amount to *infringement*, <u>and</u> that the good faith belief was reasonable. 4 *Nimmer on Copyright, § 14.04[B][2][a]*, at 14-74.

Courts may consider several factors in awarding statutory damages including:

> 'the expenses saved and profits reaped by the defendants in connection with the *infringements*, the revenues lost by the plaintiffs as a result of the defendants' conduct, and the infringers' state of mind whether willful, knowing, or merely innocent.' In awarding statutory damages, courts may also consider 'the goal of discouraging wrongful conduct.' . . . The option of electing statutory damages is especially appropriate where 'the information needed to establish an exact measure of actual damages is within the infringers' control and often is not fully disclosed.'

*Disney Enters., Inc., 427 F. Supp. 2d 807, 2006 WL 962577, at *6* (citations omitted). Plaintiff argues that an analysis of these factors demonstrates willful *infringement* because Defendants knew they were infringing or at least should have known and recklessly disregarded Plaintiff's intellectual property rights, warranting an increase in damages of up to $ 150,000 per copyrighted work infringed.


SoundCloud alone caused the infringement through its distribution of AJE owned

copyrighted works (both sound recordings and musical compositions) on the SoundCloud

subscription service, distributing these works to paying subscription customers through on-demand streams and tethered downloads. ████████████████████████████

████████████    ██████████████████████████████████████████

████████████████████████████████████████████████

████████It is important to note that SoundCloud is not inexperienced in the digital music world. The platform has been in operation for over a decade. SoundCloud knew or should have reasonably known that it needed licenses in place in order to distribute music via the SoundCloud music subscription service. Defendant's infringement was willful.

To what extent the monetization/distribution occurred is unknown to Plaintiff due to SoundCloud's failure to produce any usage data regarding the number of streams and tethered downloads (despite having the records). As to SoundCloud's financial status, and the level of damages necessary to deter future infringement, this too is unknown due to SoundCloud's failure/refusal to produce any financial information in discovery or to produce a 30(b)(6) witness regarding this topic. The ██████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████ Plaintiff submits Defendant's conduct should be viewed in a negative light toward Defendant in determining the proper damages award in this case. As such, Plaintiff submits that the appropriate damage award, likely to deter future conduct should be at the high end of the damages spectrum.

SoundCloud's conduct prior to this lawsuit regarding AJE (and all noncommercial partners) appears to have bene irresponsible at best. The global monetization of content on its subscription service by SoundCloud constitutes a blatant disregard for copyright law and the

intellectual property rights of other copyright holders. Following the filing of this lawsuit, SoundCloud has worked extremely hard to not provide critical information to Plaintiff, operating in bad faith regarding discovery, and ████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████ As such, Plaintiff contends that the proper damage award in this case is the maximum statutory damage award of $150,000 per each of the 100 acts of willful infringement, for a total award of $15 million.

### I.  **Defendants' Counterclaims**

The Countercomplaints filed by Defendants in this case seeks nothing more than a declaration of non-infringement and, of course, an award of attorneys fees. Having affirmatively established infringement on the part of SoundCloud Ltd., Plaintiff submits that all counterclaims should be summarily dismissed.

### V.  **CONCLUSION**

WHEREFORE, Plaintiff submits it has set forth sufficient facts as to entitle Plaintiff to summary judgment as to all material issues, as well as all counter-claims, and are therefore entitled to (1) a judgment as a matter of law as to the liability of Defendant SoundCloud Ltd. for 100 separate acts of copyright infringement and that those acts be ruled willful. Having elected statutory damages, Plaintiff requests this Honorable Court make an award of damages against Defendant SoundCloud Ltd. in an amount it deems appropriate given the acts committed.

Respectfully Submitted,

FRANKLIN BUSINESS LAW, PLLC

/s/ Stephen E. Grauberger
Stephen E. Grauberger, #23652
Joseph L. Rau, #34406
1224 Columbia Avenue
Franklin, TN 37064
Tel: (615) 345-4547
Fax: (615) 369-9458
steve@franklinbusinesslaw.com
joe@franklinbusinesslaw.com
*Attorneys for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

   The undersigned hereby certifies that a true and correct copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to:

        Richard G. Sanders (Tenn. BPR No. 23875)
        AARON & SANDERS, PLLC
        810 Dominican Dr., Ste. 208
        Nashville, TN 37228-1906
        (615) 734-1188
        Fax (615) 250-9807
        rick@aaronsanderslaw.com

        and

        Andrew P. Bridges (admitted *pro hac vice*)
        abridges@fenwick.com
        Guinevere L. Jobson (admitted *pro hac vice*)
        gjobson@fenwick.com
        Ciara N. Mittan (admitted *pro hac vice*)
        cmittan@fenwick.com
        FENWICK & WEST LLP
        555 California St., 12th Floor
        San Francisco, CA 94104
        (415) 875-2300
        Fax (415) 281-1350

        *Counsel for the Defendants*

This the 7th day of September, 2018.

        /s/ Stephen E. Grauberger
        Stephen E. Grauberger

23